JOHN L. WATSON V. WILLIAM COBURN ET AL.

[FILED OCTOBER 26, 1892.]

1. **Conversion:** DEFENSES: MITIGATION OF DAMAGES. When goods have been converted, and the owner afterwards receives the whole or a portion thereof back, or the proceeds arising from their sale, he does not thereby bar his right of action for the original wrongful taking, but such fact may be shown in mitigation of damages.

2. ——— : ——— : ———. In an action for conversion it is no defense to show that the property has been taken from the wrongdoer by a third party, by legal process or otherwise, unless the original owner has received it, or had the benefit of the proceeds thereof, where the same has been sold.

3. ———: MEASURE OF DAMAGES. In an action by a mortgagee for conversion against a sheriff who has levied on the property at the suit of a creditor of the mortgagor, the plaintiff is entitled to receive as damages the actual market value of the property at the time of the conversion, with interest from that date, less the market value of that portion of the property subsequently recovered or the proceeds of which plaintiff has had the benefit, and not exceeding the amount remaining unpaid on the mort-' gage.

4. **Weight of Evidence.** *Held,* That the verdict is against the evidence.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*Ambrose & Duffie,* for plaintiff in error.

*B. G. Burbank,* and *Gregory, Day & Day, contra.*

NORVAL, J.

The action below was brought by John L. Watson against the principal and sureties on the official bond of William Coburn, sheriff of Douglas county, for the conversion of a stock of furniture. There was a trial to a jury, who re-

turned a verdict in favor of the plaintiff, assessing his damages at $1,196.25.   Each party filed a motion for a new trial; both motions were overruled, and judgment was thereupon entered upon the verdict of the jury.   Each party prosecutes error to this court.

On and prior to February 28, 1888, the New York Storage & Loan Company, a corporation doing business in the city of Omaha, was the owner of the goods in controversy, and on said date it executed and delivered to Watson a chattel mortgage on said stock of goods, to secure the payment of a loan of money at the time made by Watson to the corporation, and for money previously borrowed. After the execution of the mortgage Watson took possession of the goods and managed the business until about the middle of April following, when George C. Wheeler and E. G. Cundy, the president and secretary, respectively, of the corporation, forcibly took possession of the stock and certain collaterals held by Watson to secure said loan, during Watson's absence from the store.

Thereupon Watson commenced an action in the district court of Douglas county against the New York Storage & Loan Company, Wheeler and Cundy, to restrain said Wheeler and Cundy from disposing of the collaterals and from their interfering with the stock of goods.   A temporary injunction was granted by one of the judges of the district court on the 23d day of April.   Wheeler and Cundy immediately left the country, taking with them the collateral securities.

On the morning of April 24, Watson again took possession of the store and stock of goods therein, and in the afternoon of the same day the defendant Coburn levied upon and took the goods under an execution in favor of one W. L. Hall, and against the New York Storage & Loan Company.   Subsequently the sheriff levied a writ of attachment on the goods, issued in favor of Dell R. Edwards and against said company.   The Hall execution was

issued upon a judgment rendered by the county court without any summons being issued, upon the confession of Wheeler, as president of the New York Storage & Loan Company, who had no authority so to do.

It also appears that Wheeler carried on business in the various names of New York Storage & Loan Company, New York Music Company, New York Piano Company, New York Storage Company, G. C. Wheeler & G. C. Wheeler, Manager, and incurred a large indebtedness, which he was unable to pay.

Dell R. Edwards, after the levy of her attachment, commenced an action against the New York Storage & Loan Company and W. L. Hall to enjoin the collection of the Hall judgment, and to have the same declared fraudulent and void. Subsequently she commenced another suit against the New York Storage & Loan Company, the New York Music Company, the New York Piano Company, G. C. Wheeler, Manager, W. L. Hall, John L. Watson, and others, alleging that the Watson mortgage was fraudulent and void, and praying that the same be so declared by the court, and for an accounting by all the defendants, and also that a receiver be appointed to take possession of the property of the New York Storage & Loan Company and dispose of the same. These several suits were consolidated. The court appointed E. Zabriskie receiver, and the sheriff turned over to him, on order of the court, that portion of the goods which had not been taken from him by legal process. The receiver immediately proceeded, under the order of the court, to advertise and sell the stock, and on the 6th day of August, 1888, he sold the same for $1,954.28, which sale was duly confirmed. After paying the expenses of sale, receiver's fees, other costs, and various items, not costs in the case, there remains in the hands of the clerk of the district court, of the proceeds of sale, a balance of $162.19.

John L. Watson appeared in the consolidated action and

filed an answer therein, setting up his mortgage and that he was in possession of the goods therein described, under said mortgage, at the time the sheriff made his levies.

After the issues had been made up in said action the court referred the cause to A. S. Churchill, Esq., to take the testimony and report his findings of law and fact. The referee made his report, finding the judgment entered in favor of W. L. Hall to be fraudulent and void, that the levy of the execution issued on said judgment conferred upon said Hall, or those serving said writ, no right, title, or interest in the property seized thereunder; that Dell R. Edwards had no cause of action against the New York Storage & Loan Company upon which to predicate an attachment, and that the levy of the attachment in her favor should be set aside and held for naught.

It was further found that the instrument under which Watson claimed was a *bona fide* mortgage, made upon a good and sufficient consideration; that Watson, immediately after the delivery thereof, took possession of the goods under the mortgage, and was in actual possession at the time the property was seized under the execution and attachment proceedings; that said mortgage was a paramount and superior lien upon all the property for the sum of $4,493.62, and that he was entitled to enforce it against all the property levied on under the writ of attachment and execution.

Upon motion of Watson the report of the referee was confirmed in July, 1889. Two days prior to the appointment of the receiver, Watson commenced this action against the sheriff and the sureties on his official bond to recover the value of the goods covered by the mortgage, which had been levied upon by the sheriff under the execution and writ of attachment. The sheriff and his bondsmen pleaded the proceedings in the receivership case in bar of this action.

The first question we will consider is as to the sufficiency

of this defense.   It is a rule sustained by judicial decisions in this country that where one's goods are converted by another, the owner may sue for their value, or recover the property, but he cannot pursue both remedies.   It is equally well settled that the subsequent recovery or return of the property does not extinguish the owner's right of action against the wrong-doer for the conversion, but only goes in mitigation of damages.   (*Gibbs v. Chase*, 10 Mass., 125; *Brady v. Whitney*, 24 Mich., 154; *Western Land & Cattle Co. v. Hall*, 33 Fed. Rep., 236.)   Where goods that have been converted are returned to and accepted by the owner, the measure of damages is the market value at the time of the original wrongful taking, less the market value at the time the same are returned.   (*Irish v. Cloyes*, 8 Vt., 30; *Lucas v. Trumbull*, 15 Gray [Mass.], 306.)

Testing the adjudication in the receiver case by these principles, Watson is not estopped from prosecuting his action for the conversion of the property.   It is true Watson, in the case in which the receiver was appointed, in his answer and cross-petition filed therein, claimed a lien upon the property by virtue of his mortgage, and asked that the mortgage be foreclosed.   The property had already been sold by the receiver appointed at the request of Edwards. Watson could not recover the property, so he sought to recover the money arising from the sale.   The adjudication was in his favor.   He is entitled to the $162.19, the net proceeds of the sale of the goods, which had been turned over to the clerk of the court by the receiver.   To that amount only his claim against the officer for the conversion was satisfied.   Any other rule would not make him whole.   Where property is converted, just compensation to the owner is the rule.   We are unable to perceive how the receipt of the proceeds differs from a return of the property, or the proceeds thereof, to the owner.   Such payment is proper to be given in evidence only in mitigation of damages.   Prior to the appointment of the receiver,

Watson elected to treat the levies as a conversion of the property, by bringing this action to recover the value of the goods.    In our view, the adjudication of his rights in the suit referred to does not preclude him from maintaining this action.

Complaint is made because the court refused to give the third instruction requested by the plaintiff, which is as follows:

"The defendant cannot escape liability for wrongfully levying on said property, by showing that the property or any part thereof was taken from him by third parties after he had possession of the same under his levy.

"Neither is it any defense in this action that the goods were taken out of his hands and placed in the hands of a receiver under an order of this court, unless it be further shown that the goods or their proceeds afterwards came to the hands of the plaintiff, so that he had the benefit thereof.

"You will therefore disregard all evidence tending to show that any of the goods have been taken from the hands of the sheriff by third parties, or that any of them were placed in the hands of a receiver, unless it is further shown that the plaintiff has, since that time, had the entire value of such goods; and as to such goods as he has received the entire value of, the defendants should be credited with that amount."

It requires no argument or citation of authorities to show that in an action for conversion of personal property the defendant cannot defeat the action by showing that the property, or a part thereof, has been taken from him by third parties, by legal process or otherwise, unless the original owner has received the goods, or had the benefit of the proceeds thereof.    If all or a portion of the goods converted are returned to the owner, or he receives the proceeds of the same, the wrong-doer may prove such facts, not as a complete defense, but in mitigation of damages.

35

The fact that a portion of the goods covered by plaintiff's mortgage was replevied from the sheriff, and others were turned over to the receiver, would not alone be a defense to the suit, but would be so to the extent that it was shown that Watson has had, or could have, the benefit of such property. The request stated the correct rule, was applicable to the evidence, and should have been given.

The jury disregarded the instructions of the court on the measure of damages. By the sixth paragraph of the charge the court told the jury that the plaintiff was entitled to recover:

First—The value of the property that went into the hands of the receiver, as shown by his sale thereof.

Second—The depreciation in value of the property between the date of conversion and the time when it was sold by the receiver.

Third—The value of any goods taken by the sheriff which were not turned over to the receiver, except such as were taken from the sheriff by legal process under the conditions stated in the fifth instruction.

From the amount of these items the jury were directed to deduct the amount in the hands of the clerk in the receiver case, and compute interest on the balance at the rate of 7 per cent from the time the goods were taken from the possession of the plaintiff to the first day of the term, September 23, 1889.

It is undisputed that the receiver sold the goods turned over to him for $1,950. Deducting from this $162.19, the amount in the clerk's hands, we have $1,787.81. Add $177.27 as interest for one year and five months at 7 per cent, would make $1,965.08, which is the lowest sum, under the evidence and instructions, the plaintiff was entitled to recover, and yet the jury assessed his damages at only $1,196.25.

In several of the instructions the jury were told that the plaintiff was estopped from asserting that the value of the

goods which went into the hands of the receiver was other or greater than the sum for which they were sold. This was prejudicial error. The amount the receiver obtained for the goods does not determine their value at the time of the conversion, nor was it a material inquiry what the goods brought. Plaintiff was only chargeable with that portion of their proceeds which he received or was entitled to the benefit of. To that extent alone has he received compensation. In an action by a mortgagee for conversion against a sheriff who has levied on the property, the plaintiff is entitled to recover the actual market value of the property at the time of the conversion, with interest from the time of the taking, less the market value of that portion of the property subsequently recovered, or the proceeds of which plaintiff has received, and not exceeding the amount remaining unpaid on the mortgage. This is the measure of damages.

It is unnecessary to consider the other assignments of error discussed in the brief of counsel, as the most of them are covered by what has already been said, and the others are not likely to arise on the next trial. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

THE other judges concur.